RECEIVED
NOV 3 0 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| HOWARD J. PRESTON, JR. | * | CIVIL ACTION NO. 05-221 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Howard J. Preston, Jr., born October 2, 1956, filed applications for disability insurance benefits and supplemental security income payments on August 20, 2003, alleging disability since October 8, 2002, due to instability of his lumbar spine.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence,

based on the following:

**(1) MRI dated August 31, 2001.** The MRI showed degenerative disc disease at L5-S1 with mild diffuse bulging of the disc and a superimposed right paracentral disc protrusion. (Tr. 123). This resulted in some mild thecal sac deformity on the right with probably contact of the adjacent right S1 nerve root.

**(2) Residual Functional Capacity ("RFC") Assessment dated January 28, 2003.** The Social Services Analyst 2 determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 142). He could stand/walk and sit about six hours in an eight-hour workday. He had unlimited push-pull ability. He had occasional postural limitations due to probable residual pain from his back surgery. (Tr. 143). The examiner determined that while claimant had a significant back problem for which he underwent surgery, his condition was expected to improve. (Tr. 146).

**(3) RFC Assessment dated September 15, 2003.** The medical consultant found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 150). He could stand/walk and sit for about six hours in an eight-hour workday. He had unlimited push/pull ability. He could occasionally climb, stoop, and crouch, and frequently balance, kneel and crawl. (Tr. 151). The examiner determined that claimant's symptoms had been consistent with his physical and radiological findings,

2

and that he was credible. (Tr. 154).

**(4) Records from Dr. John E. Cobb dated July 22, 2002 to April 4, 2004.**

On July 22, 2002, claimant complained of low back pain radiating to the legs. (Tr. 165). On examination, he had increased lumbar lordosis. (Tr. 166). He had full flexion without pain, and slightly increased pain on extension. DTRs were 2+ and equal. Motor and sensory function was normal. There was no weakness in the lower extremities. Straight leg raise testing was negative.

Dr. Cobb's impression was insidious onset atraumatic lumbar pain syndrome with bilateral leg pain, associated with central and right sided disc herniation at L5-S1. He recommended physical therapy and nerve blocks. (Tr. 167).

On August 21, 2002, claimant continued to complain of back pain radiating into his left leg. (Tr. 164). On examination, he had a positive straight leg test. Dr. Cobb recommended surgery.

On October 8, 2002, claimant was admitted to Lafayette General Medical Center for stenosis with segmental instability at L5-S1. (Tr. 126). Dr. Cobb performed decompression with posterior interbody fusion at L5-S1, plus pedicle screw fixation. (Tr. 126-28).

On November 4, claimant was doing reasonably well post-surgery. (Tr. 163). He was having some persistent radiculitis in right leg, but it had improved over his

pre-op condition. He was stable. Dr. Cobb prescribed Lortab 7.5.

On February 17, 2003, claimant complained of persistent back and leg pain. (Tr. 161). Dr. Cobb noted that claimant was very depressed and was having erectile dysfunction. His examination did not reveal any significant changes. Dr. Cobb's impression was that claimant was "somewhat deconditioned" and had become depressed. He prescribed Vicoprofen for pain and Viagra for erectile dysfunction, which he opined was secondary to surgery.

On August 18, 2003, claimant was still having significant back pain and pain into both legs. (Tr. 158). His x-rays indicated that he was healing very nicely. Dr. Cobb noted that claimant was very depressed. He opined that claimant was incapable of any gainful employment because he exhibited some psychosocial barriers to recovery.

On November 17, 2003, claimant still complained of pain in his back, his thighs radiating to the knees, and groin. (Tr. 157). His x-rays revealed that his fusion was fairly well-healed. However, his hip joints were significantly arthritic. Dr. Cobb observed that claimant had a "somewhat waddling" gait, and some restriction in hip motion.

Dr. Cobb stated that he could not offer very much more as to claimant's back. However, he noted that claimant's hips were a major part of his current problem. He

recommended hip replacement surgery. He opined that claimant was disabled from being able to work due to the condition of his lower back and his bilateral hip arthritis.

On January 21, 2004, Dr. Cobb wrote that claimant had recovered from his spinal surgery with a residual physical impairment of approximately 30% total body impairment. (Tr. 183). He reported that claimant also had severe degenerative arthritis in both hips, which significantly restricted him. He opined that because claimant needed bilateral hip replacement surgery, he considered claimant totally disabled from gainful employment. He noted that even following the surgery, claimant would have significant physical limitations.

Claimant returned on March 15, 2004, complaining of low back and significant hip pain. (Tr. 175). On examination, he had marked stiffness in his hips, difficulty getting up and down, and difficulty walking. The assessment was severe osteoarthritis of the hips. Dr. Cobb recommended a total hip replacement, and prescribed Lortab 5.

On April 14, 2004, claimant complained of stiffness and tightness in his back, and fairly severe pain in his hips. (Tr. 174). His examination was unchanged. Dr. Cobb gave him samples of Bextra and a prescription for Tylenol #3. He gave claimant a mobility impairment certificate. He still recommended total hip

replacements.

**(5) Claimant's Administrative Hearing Testimony.** At the hearing on September 13, 2004, claimant was 47 years old. (Tr. 201). He testified that he was 6 feet 1 inch tall and weighed 260 pounds, which was 10 pounds below his normal weight. He was a high school graduate, and had received a certification in welding. (Tr. 213-15).

Claimant testified that he had past work experience as a welder. (Tr. 203, 213). He stated that he had stopped working on October 8, 2002, because of pain in his back and legs. (Tr. 203). He reported that he was currently receiving $1,421 monthly for long-term disability. (Tr. 204).

Regarding current complaints, claimant reported that he was having back and hip pain. (Tr. 204). He stated that he had pain from the middle of his back to his legs. (Tr. 205). On a scale from 1 to 10, he rated his pain as between 9 and 10 without medication. With medication, he rated it as a seven.

Claimant stated that he needed hip surgery, but he did not have any insurance. (Tr. 206). He reported that he was taking medications, which helped a little. He stated that he did not really have any side effects from his medications.

As to activities, claimant stated that he drove three to four times a week. (Tr. 202). He reported that he spent most of the day reclining. (Tr. 207). He testified that

6

he could do only "little things" around the house. He said that the grocery shopped a "little bit." He complained that it took a while to dress himself.

Additionally, claimant stated that he socialized with friends and family. (Tr. 208). He reported that he attended church two or three times a month. He said that he spent about two hours in the morning and a little time at night watching television. He testified that he dined out less than twice a month. (Tr. 210).

Regarding limitations, claimant testified that he could stand and walk with his cane for about 30 minutes. (Tr. 209-10). He stated that he lost his balance when he tried to walk without his cane. (Tr. 211). He stated that his ability to sit varied according to his pain. (Tr. 209). He reported that he could lift a carton of milk.

**(6) Administrative Hearing Testimony of William Stampley, Vocational Expert ("VE")**. Mr. Stampley described claimant's past work as a welder as heavy and skilled. (Tr. 218). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience; who was limited to sedentary work not involving the operation of any foot controls, with no squatting, bending, kneeling, stooping, crouching, or crawling. (Tr. 218-19). In response, Mr. Stampley testified that claimant could not return to his past work, but could work as a taxicab starter, of which there were 545 positions statewide and 32,489 nationally; order clerk, food and beverage, of which there were 7,661 positions statewide and

614,507 nationally, and addresser, of which there were 13,030 positions statewide and 111,164 nationally. (Tr. 219).

When the ALJ changed the hypothetical to assume that claimant was as limited as he had testified, the VE stated that he could not even perform sedentary employment if he could not sit for two hours at a time. (Tr. 220).

**(7) The ALJ's Findings**. Claimant argues that: (1) the ALJ erred in failing to find that claimant had an impairment which met the listing at 1.02 based on the reports of his treating physician, and (2) the ALJ erred in finding that he had the capacity to perform a significant range of sedentary work, and (3) the ALJ failed to make proper use of the vocational expert. Because I agree that the ALJ failed to accord proper weight to the treating physician's opinion, I recommend that this case be **REVERSED,** and the claimant awarded appropriate benefits commencing August 20, 2003.

As to the first argument, claimant asserts that he meets the listings at § 1.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. This listing states, in pertinent part, as follows:

> *Major dysfunction of a joint(s)*: Characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

8

With:

****

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

Section 1.00B2b provides, in pertinent part, as follows:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Claimant asserts that he meets this listing because he uses a cane to assist with walking. (rec. doc. 8, p. 7; tr. 211). Additionally, he cites the fact that the social

9

security representative noted that claimant "had great difficulty getting up from his chair in the waiting room and at my desk," and that "he walked very slowly and with a cane." (Tr. 73). He further argues that his diagnosis of arthritis of the hips was supported by diagnostic testing and x-rays as interpreted by Dr. Cobb. (Tr. 157).

The ALJ rejected Dr. Cobb's opinion that claimant was "totally disabled" on the grounds that "[a] conclusory statement that a claimant is disabled or unable to work, however, has 'no specific significance,' as such statements are legal conclusions on a matter that is reserved to the Commissioner." (Tr. 18 (citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)). While this is a correct statement of the law, the undersigned finds that it does not apply in this case.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (citing 20 C.F.R. §

404.1527(d)(2)).

In this case, Dr. Cobb's opinion that claimant had significantly arthritic hips is supported by specific x-ray findings. (Tr. 157). Dr. Cobb determined that because of the severity of claimant's condition, he needed bilateral hip replacement surgery. (Tr. 183). For this reason, Dr. Cobb considered him "totally disabled from gainful employment."

The expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder "*unless contradicted by substantial evidence to the contrary.*" (emphasis added). *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978)); *see also* 20 C.F.R. § 404.1527(d)(2). Here, the ALJ has cited no substantial evidence to contradict Dr. Cobb's finding, and a full review of this record by the undersigned fails to disclose any such substantial evidence. In fact, the record reflects that claimant was still in pain, for which he was taking strong medication, through the date of the ALJ's opinion.

Dr. Cobb's most recent reports indicate that claimant was taking Lortab and Tylenol III, which are narcotic medications designed for the relief of moderate-to-severe pain. (Tr. 175, 180, 184). Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any

medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). The medication which claimant was taking is consistent with his continued complaints and the objective medical evidence. The ALJ did not take the claimant's medication into consideration, which was error.

The reports from claimant's treating physician, Dr. Cobb, do not indicate that claimant is capable of working at this time. He specifically determined, on more than one occasion, that claimant was totally disabled. (Tr. 157, 158, 183). This record does not contain substantial evidence to the contrary. Thus, the ALJ erred in the determination that claimant is not disabled.

Because the ALJ erred in finding that claimant was not disabled, the undersigned recommends that the Commissioner's decision be **REVERSED**, and that the claimant be awarded appropriate benefits. The undersigned recommends that August 20, 2003, which is also the date of the filing of the applications, be used as the onset date for the commencement of benefits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 25 day of November, 2005, at Lafayette, Louisiana.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 11-30-05
BY: ___
TO: TLM
CMH